# In the United States Court of Federal Claims

No. 22-585C

(E-Filed **UNDER SEAL**: May 31, 2022)
(Reissued:  June 27, 2022)[1]

| | |
|---|---|
| YAHYA TECHNOLOGIES, LLC<br>d/b/a Y-TECH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Competition in Contracting Act;<br>31 U.S.C. § 3553; Stay of<br>Performance; Temporary Restraining<br>Order; Mootness; Bid Protest. |

Liza Craig, Washington, DC, for plaintiff.  Joshuah Turner, of counsel.

Daniel A. Hoffman, Trial Attorney, with whom were Brian M. Boynton, Principal
Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K.
Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States
Department of Justice, Washington, DC, for defendant.  Stephani L. Abramson, National
Archives and Records Administration, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

This bid protest involves a challenge to the decision by the National Archives and
Records Administration (NARA or the agency) to override an automatic stay pursuant to

---

[1]      This opinion was filed under seal on May 31, 2022.  See ECF No. 14.  The parties were
invited to identify source selection, propriety, or confidential material subject to deletion on the
basis that the matter is protective or privileged.  As of June 27, 2022, no proposed redactions
were received from the parties.  Thus, the sealed and the public versions of this opinion are
identical, except for the publication date and this footnote.

the Competition in Contracting Act (CICA), 31 U.S.C. § 3553(d)(3)(C)(i).  See ECF No. 1 at 1 (complaint).

Presently before the court are plaintiff's motions for a temporary restraining order (TRO) or preliminary injunction, which plaintiff filed on May 27, 2022.  See ECF No. 4 (motions); ECF No. 5 (memorandum in support).  The parties argued the motions during the initial status conference in this matter, and defendant filed a response to the motions reducing its argument to writing on May 31, 2022, see ECF No. 10, and plaintiff filed a reply in support of the motions on the same day, see ECF No. 13.

The motions are now fully briefed and ripe for decision.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, the motions for a temporary restraining order or preliminary injunction are **DENIED** and plaintiff's complaint is **DISMISSED** as moot.

I.    Background

Plaintiff is a small, minority-owned business that "provides Enterprise Information Technology ("IT") Solutions, which consists of Software Development, Information Assurance, Cybersecurity, Cloud Services, Supply Chain Management, Program Management, and Helpdesk/Service Desk Support."  ECF No. 1 at 1.  Plaintiff has provided these services to the agency since 2019, when it was awarded the NARA Information Technology and Telecommunications Support Services contract.  See id. at 2.  Plaintiff is currently performing under a six-month option to extend services, which ends May 31, 2022.  See id.

In July 2021, the agency informed plaintiff that it would not exercise another option period and would instead recompete the contract.  See id.  In December 2021, the agency issued a request for quotations under full and open competition that contained, according to plaintiff, "restrictive terms."  Id. at 2-3.  Plaintiff protested that solicitation at the Government Accountability Office (GAO) and, on March 22, 2022, the agency informed the GAO that it intended to take corrective action by cancelling the solicitation and issuing a new one.  See id. at 3.  The GAO, therefore, dismissed plaintiff's protest. See id.

The agency, however, did not immediately reissue a solicitation, instead awarding, pursuant to its 8(a) authority, a sole source bridge contract to an Alaska Native Corporation on May 13, 2022.  See id. at 3-4.  Performance on the bridge contract began on May 16, 2022.  See id.

Plaintiff filed a second GAO protest on May 20, 2022, alleging that the agency failed to take corrective action and issued the bridge contract in bad faith.[2]  See id. Plaintiff's GAO filing triggered an automatic Competition in Contracting (CICA) stay of performance under the contract.  See id.  On May 25, 2022, the agency notified plaintiff that it intended to override the CICA stay and allow performance to proceed. See id.  The agency determined, in a four-page document, that continued performance of the bridge contract "is in the best interests of the United States."  See ECF No. 5-1 at 30 (Justification for Continued Performance of Awardee).  The justification is concise and consists, in relevant part, of the following:

> Continued contract performance of Award No. 88310322P00039 is in the best interests of the United States in accordance with FAR 33.104(c)(2)(i).

> The decision to override the stay is based on contract performance being in the best interests of the United States.  Notwithstanding contract performance over the past two-years, within the past six-months NARA has endured three service outages of varying degrees, and more recently NARA has identified significant security vulnerabilities within its information technology systems that went unresolved by the incumbent.  The outages and unresolved vulnerabilities present a risk to NARA's infrastructure and its ability to meet the Agency's core mission.

> The United States has come under increased attack by foreign states.  These entities exploit common vulnerabilities and exposures (CVE) seeking access to vital Government systems and information.  The Department of Homeland Security (DHS) noted these vulnerabilities are among a specific set of vulnerabilities that are actively exploited by Russian Advanced Persistent Threat (APT) groups.  The Cybersecurity and Infrastructure Security Agency (CISA) notified NARA of these vulnerabilities November 2021, with subsequent notifications in March 2022.  These vulnerabilities went unresolved by the incumbent for nearly five months, a condition that presented a significant security risk to the Agency.

> Consequently, due to deficiencies in the incumbent's performance, NARA determined it is not in the best interest of the United States to exercise additional performance periods beyond May 31, 2022, the end of the current option. But because the services are essential to the Agency's operation, NARA must have a contract in place to perform these services. Thus, it is necessary to override the statutory stay.

---

[2]     In its complaint, plaintiff states that it filed its second GAO protest on May 20, 2011.  See ECF No. 1 at 4.  Given the context of the case and the timeline at issue, the court assumes that plaintiff intended to provide the date as May 20, 2022.

Id. at 30-31.

On May 27, 2022, plaintiff filed the instant protest challenging the agency's decision to override the CICA stay.  See ECF No. 1.  Plaintiff alleges that if the agency is not enjoined from overriding the stay, it will go out of business and will not be able to compete for the contract when it is recompeted.  See id. at 7.  Specifically, plaintiff argues that "absent an injunction, [plaintiff] will cease to exist shortly after May 31, 2022," ECF No. 5 at 21, and its "ability to maintain its highly skilled staff," will likely be "destroy[ed]," id. at 22.

The court convened an initial status conference with the parties on May 31, 2022. See ECF No. 11 (order memorializing the status conference).  During the conference, both parties set forth their respective arguments regarding plaintiff's request for a TRO or preliminary injunction.  See id. at 2.  The court then set a compressed briefing schedule to permit the parties to reduce their arguments to writing.  See id. at 3.

II.     Legal Standards

A.      Bid Protest Jurisdiction

In its complaint, plaintiff invokes this court's bid protest jurisdiction.  See ECF No. 1 at 5.  This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  The Tucker Act also states that the court may grant "any relief that the court considers proper, including . . . injunctive relief."  28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must demonstrate that it is an "interested party."  28 U.S.C. § 1491(b)(1).  The United States Court of Appeals for the Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009).  Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'"  See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006))

(alteration in original).  Although "standing is not often discussed at length in CICA stay override cases," the court makes the same inquiry into actual or prospective bidder status and direct economic interest in such circumstances.  PMTech, Inc. v. United States, 95 Fed. Cl. 330, 348 (2010).

### B.     Temporary Restraining Order Relief

A temporary restraining order is an "'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  Jones Automation, Inc. v. United States, 92 Fed. Cl. 368, 370 (2010) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).  In evaluating whether a temporary restraining order or a preliminary injunction is appropriate, the court considers whether the moving party has demonstrated that:  (1) it is likely to succeed on the merits; (2) it will be irreparably harmed without injunctive relief; (3) the balance of hardships tips in its favor and (4) the public interest favors the grant of injunctive relief. Safeguard Base Operations, LLC v. United States, 140 Fed. Cl. 670, 686 (2018) (citing Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 116 (Fed. Cir. 2014)). "No single factor is determinative, and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Contracting Consulting Eng'g LLC v. United States, 103 Fed. Cl. 706, 709 (2012) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).  It is also true, however, that "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors" to justify denial of a preliminary injunction or temporary restraining order.  Safeguard, 140 Fed. Cl. at 687 (quoting FMC Corp., 3 F.3d at 427).

## III.   Analysis

### A.     Defining the Status Quo

In this case, plaintiff challenges the agency's decision to override a CICA stay, and has standing to do so as the incumbent contractor performing the work at issue in the bridge contract that was stayed by plaintiff's GAO protest.  See ECF No. 1 at 2; PMTech,, 95 Fed. Cl. at 348.  The CICA states, in relevant part, as follows:

(A)    If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—

(i)    the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

(ii)   if authorization for contract performance to proceed was not withheld . . . before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

(B)   Performance and related activities suspended pursuant to subparagraph (A)(ii) by reason of a protest may not be resumed while the protest is pending.

(C)   The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

(i)   upon a written finding that—

(I)   performance of the contract is in the best interests of the United States; or

(II)   urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and

(ii)   after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3).

The "'automatic stay is intended to preserve the status quo during the pendency of the protest so that an agency would not cavalierly disregard GAO's recommendations to cancel the challenged award,' thereby 'preserv[ing] competition in contracting and ensur[ing] a fair and effective process at the GAO.'" Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 710 (2006) (quoting Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. 25, 31 (2006)) (alterations in original).

In its motions, plaintiff argues that the stay is essential to preserve the status quo. See ECF No. 5 at 22-23 (arguing that maintenance of the status quo is the purpose of the CICA stay and without it, plaintiff will suffer irreparable harm). Plaintiff implies throughout its motions, without stating explicitly, that the status quo for this procurement is plaintiff's continued performance under its 2019 contract and a suspension of the bridge contract. See generally ECF No. 5. Plaintiff also specifically states in its reply in support of its motions that "Congress enacted the CICA Stay to maintain the 'status quo,'

6

pending a thorough review of the acquisition . . . .  That is all [plaintiff] wants here, the opportunity to continue performing pending the outcome of the GAO protest."  ECF No. 13 at 4 n.2.

Defendant argues, however, that plaintiff "seeks to alter the status quo, not maintain it."  ECF No. 10 at 3 (capitalization altered).  According to defendant, plaintiff "has known since July 2021 that NARA intended to recompete the contract in order to restructure the contract."  Id.  Defendant contended during the initial status conference that this is, in fact, the status quo—plaintiff's contract ends on May 31, 2022, and it has the opportunity to compete for the new contract.  See ECF No. 11 at 2.  Defendant thus argues that the corrective action the agency intends to take will allow plaintiff to compete for the contract and the status quo has not changed because of the override of the stay. See ECF No. 10 at 3.

In the court's view, the defendant's definition of the status quo is the correct one. Plaintiff has known since July 2021 that the agency would not exercise additional options to extend its contract and that it would need to recompete for the new contract should it wish to continue working with the agency.  See ECF No. 1 at 2; ECF No. 5 at 6.  Thus, the status quo in this matter is that plaintiff's contract ends on May 31, 2022.  The court can see no reason, and plaintiff has not presented a reason, that the agency is under an obligation to continue plaintiff's contract beyond May 31, 2022, simply because it is still in the process of recompeting the contract.

The court further notes that plaintiff's GAO protest of the bridge contract does not redefine the status quo.  The outcome of the GAO protest simply does not dictate whether plaintiff would continue its performance beyond May 31, 2022.  That the agency issued a sole source bridge contract pursuant to its 8(a) authority, and whether that contract was issued in bad faith, is a separate matter to the continuation of plaintiff's contract.  In other words, whether the bridge contract is stayed or the stay is overridden does not necessarily bear on the continuation of plaintiff's performance.

B.     Plaintiff's Protest of the CICA Stay Override Is Moot

To address an issue brought before the court, "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." Already, LLC v. Nike, Inc., 568 U.S. 85, 90-91 (2013) (quoting Alvarez v. Smith, 558 U.S. 87, 92 (2009)).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Id. at 91 (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)).  "'The test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'"  Nasatka v. Delta Sci. Corp., 58 F.3d 1578, 1580-81 (Fed. Cir. 1995) (quoting Air Line Pilots Ass'n Int'l v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990))

(alteration in original).  Thus, in determining whether a case should be dismissed as moot, the court must "examine whether the decision of any disputed issue 'continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'" Id. at 1581 (quoting Flagstaff Med. Ctr., Inc. v. Sullivan, 962 F.2d 879, 884 (9th Cir. 1992)); see also Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, (1992) (stating that a case is not moot if the "court can fashion some form of meaningful relief" (emphasis omitted)); McTech Corp. v. United States, 105 Fed. Cl. 726, 731 (2012) ("[W]here a defendant's actions have eliminated the possibility of meaningful relief, the case ordinarily should be dismissed as moot.").

Here, the court cannot fashion any meaningful relief for plaintiff.  Plaintiff seeks to continue its current performance until its pending GAO protest is decided.  See ECF No. 13 at 4 n.2.  According to plaintiff, if it is not permitted to continue performance it may "cease to exist," irreparably harming it.  See ECF No. 5 at 21; see also ECF No. 13 at 3 (stating that if it is not permitted to continue performing for the agency it "will be unable to compete for future work as it will have been put out of business and almost all [of plaintiff's] employees will be consumed by" the bridge contractor).  By plaintiff's own complaint, however, the CICA stay applies only to the bridge contract.  See ECF No. 1 at 4 (stating that the agency "was obligated to suspend performance of the Bridge Contract").

Even if the court were to order the agency to maintain the CICA stay and the status quo, as the court determined above, the status quo in this case is that plaintiff's contract expires on May 31, 2022.  The only relief the court can order in this case is that the bridge contract be suspended pursuant to the CICA stay pending the GAO's decision in plaintiff's protest.  This relief does not accomplish, as plaintiff assumes, the continuation of plaintiff's performance of the work for more than a matter of hours.  The court cannot order the agency to exercise another option on plaintiff's contract or otherwise permit plaintiff to continue performing as plaintiff requests—and indeed states is necessary for the continuation of its business.  See ECF No. 13 at 4 n.2; ECF No. 5 at 21.  This appears to the court, however, to be the only meaningful relief for plaintiff.  Merely suspending the bridge contract does not afford plaintiff the work it deems necessary for the continuation of its business.  The court can conceive of no other relief that it has the authority to fashion under the circumstances that would meaningfully address plaintiff's complaint.

Thus, because the court cannot fashion any meaningful relief for plaintiff, its claim is moot and its case must be dismissed.  See Nasatka, 58 F.3d at 1580-81; see also Mail Transp., Inc. v. United States, 153 Fed. Cl. 205, 214-15 (2021) (finding that plaintiffs' claims were not moot where the expiration of their contract did not "eliminate the possibility of an effective remedy were plaintiffs to prevail in their protest").  As such, the court does not reach the merits of plaintiff's motions for a TRO or preliminary injunction, and its motions must be denied.

IV.     Conclusion

        Accordingly, for the foregoing reasons:

        (1)     Plaintiff's motions for a temporary restraining order or preliminary
                injunction, ECF No. 4, are **DENIED**;

        (2)     The clerk's office is directed to **ENTER** final judgment in defendant's
                favor **DISMISSING** plaintiff's complaint, without prejudice, as moot; and

        (3)     On or before **June 21, 2022**, the parties are directed to **CONFER** and
                **FILE** a **notice** attaching the parties' agreed upon redacted version of this
                opinion, with all competition-sensitive information blacked out.

        IT IS SO ORDERED.

                                                s/Patricia E. Campbell-Smith
                                                PATRICIA E. CAMPBELL-SMITH
                                                Judge